*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HEIDE S SIKLICH REVOCABLE TRUST
DATED 4/28/21.

MARTIN SIKLICH,

        Petitioner-Appellee,

v

GERARD SIKLICH,

        Respondent-Appellant.

UNPUBLISHED
November 13, 2024
11:43 AM

No. 370194
Grand Traverse Probate Court
LC No. 23-037253-TV

Before: BOONSTRA, P.J., and MURRAY and CAMERON, JJ.

PER CURIAM.

Respondent appeals by right the probate court's February 29, 2024 order denying reconsideration of its earlier February 5, 2024 order, which removed him as trustee of the Heide S. Siklich Revocable Trust (the trust), terminated that trust, and ordered a full accounting of the disposition of trust assets. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent and petitioner are among Heide Siklich's four children. In 2020, Heide's sister Eva Norris died without a will, leaving Heide as her sole heir and beneficiary. Respondent was the executor of Norris's estate. In April 2021, Heide's trust (styled as an agreement between Heide and respondent) was created, with respondent as the trustee and Heide as the beneficiary. The trust named respondent as the sole beneficiary of residual trust assets upon Heide's death. Respondent later filed an accounting in connection with his administration of Norris's estate, which reflected that, in August 2021, approximately $750,000 had been distributed into Heide's trust from Norris's estate.

In 2022, the probate court granted Heide's request to appoint petitioner as her conservator because her age and physical infirmity had made her unable to manage her financial affairs.

-1-

On February 9, 2023, petitioner filed a petition with the probate court, requesting that the court determine the validity of the trust, supervise the administration and distribution of trust assets, and enjoin respondent from distributing trust assets. Petitioner alleged that Heide had no knowledge of creating or executing the trust, and that the trust was not prepared by Heide's estate planning attorney; further, the trust conflicted with a previous trust established by Heide with the aid of her estate planning attorney, Diane Huff.[1] Petitioner also alleged that Heide had no recollection of directing that respondent receive the entirety of her inheritance from Norris upon her death, or of permitting distributions from that inheritance to respondent while Heide was alive. Petitioner accused respondent of fraudulently directing funds from Norris's estate solely to himself, as well as establishing a fraudulent trust to transfer the remaining funds belonging to Heide to himself, for his personal benefit.

The probate court ordered respondent to provide accountings for the trust assets for the years 2021, 2022, and 2023, but respondent did not provide any such information. The probate court also appointed Huff as Heide's guardian ad litem (GAL) in this matter. Respondent did not appear for a court-ordered mediation, and he also failed to appear for a hearing on petitioner's motion to compel discovery, causing the probate court to hold him in contempt. On January 19, 2024, petitioner filed a motion to terminate the trust and to require respondent to turn over all trust assets. Respondent appeared *in propria persona* at a settlement conference on January 23, 2024. At that conference, respondent was served with a copy of petitioner's motion to terminate the trust. Respondent stated that his failure to appear at previous hearings and to provide discovery materials and accountings was because of a series of physical injuries and illnesses he had suffered. When the court inquired as to why these issues had prevented him from answering interrogatories or providing accountings for nearly a year, respondent stated that he "just—couldn't think" and "was on some heavy-duty medication." He claimed that all of the trust financial documents and discovery requests were in "two tubs full of lawsuits" that he had not had a chance to review. Nonetheless, respondent opined that he was able to serve as trustee of the trust.

When the probate court asked him to account for approximately $750,000 in trust assets, respondent stated that he had bought a house for himself and had spent $180,000 "fixing up [his] aunt's house in New York." Respondent testified under oath that "probably $15,000" of trust assets was spent for Heide's benefit, with at least $685,000 being spent for respondent's own benefit; he stated that Heide had "said I don't want nothing at all to do with that money" and had said that she wanted him to have it. Respondent testified that all of the trust assets had been spent. Respondent later elaborated that he had used trust assets to purchase a home for himself as well as "[i]nvestments and things I bought my mom [Heide], and furniture."

The probate court asked the parties if they had discussed a date for a hearing on petitioner's motion to turn over trust assets. After a brief recess, the probate court stated on the record that the hearing on petitioner's motion would be held on January 30, 2024. Respondent replied "Okay" and that he would "make it work."

---

[1] This previous trust was established in 2009 and was restated in 2015; petitioner testified that he was the trustee of the initial trust.

The hearing on petitioner's motion was held on January 30, 2024. Respondent was not present when the hearing began, but arrived approximately twenty minutes late (just as he had for the earlier settlement conference). Petitioner's counsel informed the trial court that they had "received no correspondence, no calls, nothing" and "[n]o documentation" from respondent since the settlement conference.

Huff testified that she had met with Heide after Norris's death, that Heide had no recollection of creating or executing the trust, and that Heide had no recollection of ever saying that she wanted Norris's money to go solely to respondent rather than be divided among her four children. Petitioner testified that he, in his capacity as Heide's conservator, had not received any funds from respondent for Heide's benefit. He testified that he believed that respondent had convinced Heide that he would deposit her inheritance from Norris into her existing trust, not create a new trust with himself as the trustee and beneficiary, and that respondent misled Heide into thinking that she was signing documents for her current trust, not executing a new trust. Petitioner testified that Heide's resources were "starting to run out" in light of her assisted-living costs and other expenses.

At the hearing, respondent provided petitioner with a one-page, unsigned document, prepared by respondent, purporting to account for the distribution of trust assets and Heide's share of Norris's estate. The document indicated that $610,000 was spent on purchasing a house for respondent, attributed $320,000 to stock losses, and listed various legal fees and miscellaneous expenses. Respondent also provided petitioner with a copy of a notarized letter signed by Heide in May 2020 indicating that she intended that respondent inherit the entirety of her interest in Norris's estate if she were to die or become incapacitated, and appointing respondent as the administrator of Norris's estate.[2]

When the probate court asked respondent why he had not used the court accounting forms that had been provided to him, respondent stated "Honestly, your Honor, I just – the pressure I have been under lately, I'm just not paying attention to stuff . . . I've got buckets, I've had to take stuff out, put it back in, and just kind of got lost in it." Respondent claimed that he had proof in the form of recordings and text messages that he had complied with his mother's wishes, but admitted that he had not provided this proof to the court or petitioner.

The probate court granted petitioner's request to terminate the trust, stating in relevant part:

> [This court] make[s] a finding that based on [respondent's] testimony last time and the testimony here of Ms. Huff and [petitioner] is [sic] that it clearly appears that the monies from the Eva Norris trust [sic], yeah, trust, were not used for the benefit of Heide Siklich. [Petitioner] testified that none of those funds ever

---

[2] The probate court noted that, according to documents related to Norris's estate, respondent had paid himself $35,670 as an "administration commission" for administering the estate. This administration commission consisted of paying funeral expenses and directing several large distributions to himself and the trust.

-3-

were provided to him to put into the conservatorship account or into the trustee account based on his being a trust[ee] of a 2015, 2009 revised 2015, trust.

> There's nothing in the April 23rd, 2021 trust allegedly signed by Heide that revokes any prior trust. It does indicate in that document attachments [sic] as to how much the funds that were from Eva that should have gone into either this trust in '21, which did not happen, or the original trust.

The court also found that respondent was not competent to serve as trustee, stating in relevant part:

> You know, last time you were here you indicated a good number of physical issues and challenges that have befallen you this past year.

> And you also indicated that at times you have been confused and this is a little overwhelming, and you're not sure if you can find the documents. And here again today you indicated you haven't complied with the order [compelling discovery]. You have indicated to some degree not understanding the Court's direct direction to you, explicit direction to you to use the court forms.

> So I also find that you're not competent to continue as the trustee. A trustee needs to be able to handle money, know where it's going, act in the best interests of whoever you're the trustee of, and complete paperwork, send accountings to the conservator, which have [sic] not occurred. So you're not doing what you're supposed to be doing as a trustee.

> So I find that you're not able to continue in those responsibilities, plus for the other reason I've already stated you haven't complied with the terms of that alleged trust in providing information to the conservator.

The probate court concluded that the trust would be terminated "for a number of reasons as to, you know, breach of trust with elective duties under law and under terms of that reported trust, those haven't been complied with appropriately" and that respondent would be removed as trustee "because he hasn't complied with the duties of a trustee."

Accordingly, the court issued its February 5, 2024 order removing respondent as trustee and terminating the trust as described. Regarding respondent's removal as trustee, the court noted that respondent had testified to mental stress and medical issues, and had testified to "a haphazard manner in which he has maintained certain financial records, i.e., 'they are in a tub.' " The court also found that respondent had failed to document the transfer of funds from Norris's estate to the trust, failed to file any accountings despite being directed by the court to do so, and failed to keep Heide's conservator apprised of trust assets. The court also found that respondent had taken "other suspicious actions," including paying himself out of the trust for trust administration and travel expenses, and noted that respondent had admitted that he used approximately $650,000 in trust assets to purchase a home for himself. The court found that respondent had breached his fiduciary responsibilities as trustee of the trust and had violated MCL 700.7706(2)(a)(c), and (d).

Regarding the termination of the trust, the probate court stated that it was "highly likely" that the trust was drafted by respondent; further, the trust instrument made no mention of Heide's prior trust, despite directly contravening the terms of that trust. The court noted Huff's testimony that Heide had never expressed any intention to leave all of her assets to respondent. In fact, Heide had signed an amendment to her prior trust in 2022, indicating that respondent would only receive his share of her estate if he returned the funds from Norris's estate to the trust within one year of Heide's death. The court found that Heide had "disavowed any intention that she may have ever had that [respondent] would have free reign with the funds that Eva Norris left to her as sole beneficiary . . . and/or that he would retain 100% of any residual amount upon the death of Heide Siklich." The court concluded that the 2022 amendment manifested a clear intent to revoke the trust, and it accordingly terminated the trust under MCL 700.7602(3).

After the probate court issued its order, respondent, now represented by counsel, filed a motion for reconsideration. Respondent asserted in his motion for reconsideration that petitioner was verbally and financially abusive to Heide, and that petitioner was unsuitable to serve as her conservator. Respondent also asserted that his purchase of a home with trust assets was carried out at Heide's request, so that she could move out of assisted living and reside with respondent. Respondent argued that he "feared the consequences which could befall Heide" if he provided information on trust assets to petitioner. He also argued that the probate court had erred by finding that respondent's stress and medical issues rendered him unable to administer the trust, stating that respondent's statements about stress and being overwhelmed had related to dealing with lawsuits he was engaged in, not trust administration. Respondent also noted that he had not been given fourteen days to respond to petitioner's motion as required by MCR 5.108(B)(1). The probate court denied respondent's motion, stating in its order that respondent's motion did not address the termination of the trust and that "[t]here is no trustee needed for a trust that no longer exists." The court stated that respondent would need to address issues relating to petitioner's suitability as a conservator or trustee through the filing of new petitions to modify the conservatorship or trust. The court concluded that respondent's motion did not seek reconsideration of matters addressed in its February 5, 2024 order.[3]

This appeal followed.

## II. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision on a motion for reconsideration. *Farm Bureau Ins Co v TNT Equip, Inc*, 382 Mich App 667, 672; 939 NW2d 738 (2019). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Id.* We review de novo the interpretation of statutes and court rules. *White v Taylor Distributing Co, Inc*, 275 Mich App 615, 620; 739 NW2d 132 (2007).

## III. ANALYSIS

---

[3] Respondent filed a motion styled as an amended motion for reconsideration on March 4, 2024; the trial court noted that this motion was nearly identical to the original motion, with only minor changes, and denied it for the same reasons stated in its original order denying reconsideration.

Respondent argues that the probate court erred by denying his motion for reconsideration. We disagree.

MCR 2.119(F) governs motions for reconsideration, and provides in relevant part:

Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error. [MCR 2.119(F)(3).]

A trial court "does not abuse its discretion by rejecting arguments made in a motion for reconsideration that could have been made in response to the original motion." *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 150; 946 NW2d 812 (2019).

MCL 700.7706 governs the removal of a trustee by the probate court, and provides in relevant part:

The court may remove a trustee if 1 or more of the following occur:

(a) The trustee commits a serious breach of trust.

(b) Lack of cooperation among cotrustees substantially impairs the administration of the trust.

(c) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the purposes of the trust.

(d) There has been a substantial change of circumstances, the court finds that removal of the trustee best serves the interests of the trust beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available. [MCL 770.7706(2).]

In this case, the probate court found that the removal of respondent as trustee was appropriate under MCL 770.7706(2) (a), (b), and (c). Respondent does not specifically challenge the court's ruling on petitioner's motion at the time it was made; rather, respondent argues that the court should have reconsidered its decision in light of the arguments made in his motion for reconsideration.

Respondent principally argues that the probate court erred by rejecting his arguments concerning petitioner's alleged financial and verbal abuse of Heide. We disagree. Respondent did not claim in his motion for reconsideration that he had only recently discovered the alleged abuse; rather, he specifically stated that his knowledge of petitioner's abuse of Heide was the reason why he did not provide information about the trust's assets to petitioner. This argument and its accompanying evidence could have been presented in response to petitioner's original motion; accordingly, the probate court did not abuse its discretion by rejecting it. *Pioneer State*

-6-

*Mut Ins Co*, 330 Mich App at 150. The same is true for respondent's assertion, made for the first time in his motion for reconsideration, that the home he purchased with trust assets (which was solely titled in his name) was intended to be Heide's residence as well. *Id.* Respondent was given the opportunity to raise these arguments at the settlement conference or in response to petitioner's motion to remove respondent as trustee and terminate the trust, but he chose instead to claim that stress and medical issues had prevented him from providing petitioner with any accountings or responding to discovery requests. In any event, respondent's arguments do not explain why he could not provide *the court* with the accountings and documentation that he had been repeatedly ordered to provide. We find no abuse of discretion in the probate court's rejection of these arguments. *Id.*

Additionally, as the probate court noted, respondent did not address its holding that the trust was terminated based on its revocation by Heide under MCL 700.7602(3). Therefore, to the extent that respondent argues on appeal that the trust should not have been terminated, that argument is not preserved and is therefore waived. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023); slip op at 4-5 (holding that unpreserved issues in civil cases are waived); *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020) (stating that an issue must be raised or decided in the lower court to preserve it for appellate review).

Respondent also briefly argues that he was not given the full fourteen-day period between service of a motion and the hearing on the motion required by MCR 5.108(B)(1). We disagree. It was confirmed on the record at the January 23, 2024 settlement conference that respondent was personally served with the motion at that time, and the date for the hearing was set on that day for January 30, 2024. In contrast to MCR 5.108(B)(1) (which applies to service by mail), MCR 5.108(A) states that personal service of a petition or motion must be made at least 7 days before the date set for the hearing. This personal service satisfied that requirement. MCR 1.108. Moreover, respondent affirmatively acquiesced to the date of the hearing, and accordingly waived challenging it on appeal. See *Tolas Oil & Gas Exploration Co*, ___ Mich App at ___; slip op at 4-5; *Glasker-Davis*, 332 Mich App at 227.

Affirmed.

/s/ Mark T. Boonstra
/s/ Christopher M. Murray
/s/ Thomas C. Cameron